## MONTGOMERY WARD & CO. v. NATIONAL LABOR RELATIONS BOARD (UNION OF WARD EMPLOYEES, Intervener).

### No. 412.

Circuit Court of Appeals, Eighth Circuit.
April 3, 1939.

John A. Barr, of Gary, Ind., and Stuart S. Ball, of Chicago, Ill. (Henry N. Ess, of Kansas City, Mo., on the brief), for petitioner.

Clifford D. O'Brien, of Portland, Or. (Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, National Labor Relations Board, and Laurence A. Knapp and Allen Heald, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for respondent.

Spencer A. Gard, of Kansas City, Mo. (Woodruff & Gard, of Kansas City, Mo., on the brief), for intervener.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

On an amended charge (dated June 15, 1937), the Regional Director filed a complaint (dated June 16, 1937) against Montgomery Ward & Company, Incorporated, charging unfair labor practices at its plant in Kansas City, Missouri. The complaint included allegations of improper discharge of Robert Green and of domination and support of an organization of the employees known as "Union of Ward Employees". This organization was allowed to intervene under limitations to be hereinafter noticed. After various pleadings, there was a hearing before an examiner. Near the end of the evidence introducd by the Board, the complaint was amended by advancing the date of the beginning of the alleged unfair practices and by adding the charge of improper refusal to hire Charles E. Hooper. The intermediate report of the examiner found improper discharge of Green; no proof of improper refusal to hire Hooper by anyone having author-

ity to hire him; and domination, influencing and contributing financial and other support to the Union of Ward Employees (hereinafter called Union). Extensive and detailed exceptions were filed to this report by the company.[1] The Board made findings of fact, stated conclusions of law and entered an order requiring the company (1) to "cease and desist" (a) from interfering with, restraining or coercing its employees in labor organization for collective bargaining; (b) from discouraging membership in United Mail Order and Retail Workers of America (hereinafter called C. I. O.) or "any other labor organization of its employees at its Kansas City, Missouri, plant, by discharging, refusing to reinstate, refusing to hire, or otherwise discriminating", etc.; (c) from dominating or interfering with the administration of or contributing support to the Union or "any other labor organization of its employees" at this plant; and (2) affirmative action as follows: (a) offer immediate reinstatement and reimbursement to Robert Green without loss of privileges; (b) place Charles E. Hooper on preferential hiring list and offer employment when available; (c) withdraw all recognition from the Union as the bargaining representative of its employees and completely "disestablish" it as such representative; (d) immediately post notices of compliance; and (e) notify the Regional Director of action in compliance. The company filed extended and detailed exceptions to the findings and order of the Board in the form of a "motion * * * for modification of findings of fact and order of National Labor Relations Board". This "motion" was denied.

The company has filed here its petition for review. The Board answered this petition and, therein, prayed enforcement of its order. The Union was allowed to intervene and file "assignment of errors" to the decision and order of the Board in so far as its interests were involved therein. The matter has been presented upon briefs and oral argument of the parties and of the intervener.

The attacks upon the order of the Board are of two kinds: first, that the "Trial Examiner's conduct of the hearing and the Board's treatment of the case operated to deprive this petitioner of a

---

[1] In the "Decision and Order" of the Board, it is stated that, also, the Union filed exceptions to the report of the examiner but no such exceptions are in the printed record here.

full and fair hearing"; and, second, that there is no substantial evidence to sustain the findings of the Board as to any of the three matters involved in the hearing.

■ We think the petitioner has established its case upon the ground of unfairness of trial and, therefore, we do not determine the sufficiency of the evidence as to any of the matters involved. Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 59 S.Ct. 301, 83 L. Ed. ——.

■ Every word of this extensive record has been carefully read and considered and very much of it re-read. We cannot escape the conclusion that, in the hearing, the company was denied that fairness which is required by due process of law.

The responsibility for this situation rests primarily upon the examiner. It was not recognized nor corrected by the Board. It sprang from the decided partisanship of the examiner. Rather loosely classified, it manifested itself by omissions from the record of occurrences at the hearing; by unfairly restricting examination and cross-examination by counsel for the company and for the intervener; by a hostile attitude toward witnesses (whether called by the Board or not) who might be supposed to favor the company or the intervener; and by an obvious attitude of bias in other instances. In discussing these actions and this attitude of the examiner, we shall not attempt to cover all instances but merely enough to illuminate the situation.

Omissions from record. This matter appeared, initially, at the beginning of the hearing. The footnote is a quotation of this portion of the record (the asterisks indicate omissions.)[2] During the cross-

---

2 "Appearances:

"Paul F. Broderick, Attorney, on behalf of the National Labor Relations Board.

"Henry N. Ess, John Barr and Carl Enggas, 1500 Dierks Bldg., Kansas City, Mo., on behalf of Montgomery Ward & Company.

"W. F. Woodruff and Spencer A. Gard, 825 Lathrop Bldg., Kansas City, Mo., on behalf of The Union of Ward Employees.

"E. H. Gamble, 409 Scarritt Bldg., Kansas City, Mo., on behalf of Union of Ward Retail Employees.

\* \* \* \* \* \*

"Trial Examiner Paradise: Let the record show that this is a motion by the Union of Ward Employees for leave to intervene, made by their attorneys, Woodruff and Gard.

\* \* \* \* \* \*

"Trial Examiner Paradise: The decision of the Examiner on the motion will be as follows: The motion to intervene is granted upon the following conditions: That the Union of Ward Employees shall have the right to be represented in this proceeding by counsel who may, with other counsel in the proceeding, sit at the counsel table and take notes, but shall not be permitted to cross-examine witnesses or to adduce any evidence until the Board and the Respondent have completed their case. If at that time the intervener wishes to [adduce] additional evidence beyond that which has already been introduced in the proceeding in support of its contention that it is not a company dominated Union, or for such other purposes as may be relevant at that time, the Union of Ward Em-

ployees will then have an opportunity to produce such evidence and to participate in the proceedings with relation to such evidence.

"Is that satisfactory to you, Mr. Woodruff?

"Mr. Woodruff: I should like to except to the limitation that we will not be permitted to cross-examine witnesses that are put on by the Labor Board or by the Respondent. It seems to me that that is an essential to our right to participate in this hearing.

\* \* \* \* \* \*

"Trial Examiner Paradise: Now on this motion of the Union of Ward Retail Employees; do you wish to be heard orally, Mr. Gamble?

"Mr. Gamble: Has your Honor read the motion?

"Trial Examiner Paradise: I haven't had an opportunity to read the papers yet.

"Mr. Gamble: Then I might as well state it.

\* \* \* \* \* \*

"Trial Examiner Paradise: The ruling on the motion will be as follows: Let the record show that counsel for the Board has indicated that he has no objection to the Union appearing despite the fact that he does not believe that they have any interest in this proceeding.

"In my judgment the Union of Ward Retail Employees has no interest in this proceeding sufficiently direct to warrant the granting of the motion to intervene, and, accordingly, the motion is denied with an exception to counsel for the Union of Ward Retail Employees.

\* \* \* \* \* \*

examination, by counsel for the company, of a hostile Board witness, a somewhat heated discussion arose as to the proper limits thereof. The record quoted in the

"Trial Examiner Paradise: Will the Court please come to order?

"Now, I have considered your motions, Mr. Ess, and also given further consideration to the motion to intervene made by the Union of Ward Employees, and at this time as a result of such further consideration I wish to modify my ruling on that motion to intervene so that my decision thereon will be as follows: that the motion to intervene is granted on condition that the right of counsel for the intervener to cross-examine, introduce evidence and otherwise participate in the proceeding, shall be limited to such issues which are concerned with the alleged violation by Montgomery Ward & Co. of Subdivision 2 of section 8 of the Act, namely the charge that the Union of Ward Employees is a company dominated union; and with the further understanding that the right is reserved by the Examiner to curtail any cross-examination by the intervener if in his opinion such cross-examination is repetition or unduly prolonged or for any other reason either unnecessary or improper; and the same limitation shall apply to the right to introduce evidence; that is, the right to introduce evidence is limited to such evidence as is not repetitious and will not unnecessarily and improperly prolong the proceeding.

\*     \*     \*     \*     \*     \*

"Mr. Woodruff: I object to that limitation for the reason that the interests of my client are affirmative, as well as negative. The allegation in the motion sets up affirmatively the grounds and reasons for the organization and maintenance of the intervener. I think I should have the right to cross-examine on that issue and present evidence on that affirmative issue presented by the intervening motion; also the right to introduce evidence as to the development of the membership and the status of this union I represent since the plant has been closed, since the members of the union have been at their homes away from the plant, away from any contact with respondent or any of its officers or representatives. Those I think are important, vital, affirmative issues necessarily inherent in this trial.

\*     \*     \*     \*     \*     \*

"Trial Examiner Paradise: With respect to the motion by the Respondent that the complaint be made more definite and certain, it appearing to the Examiner that the complaint is sufficiently specific to apprise the Respondent of the issues and enable it to prepare its defense, this motion is denied.

"Mr. Ess: Note an exception of the Respondent to the ruling of the Examiner.

"Mr. Barr: At this time, if the Examiner please, the Respondent moves that this proceeding be dismissed for the reason that during the morning session this day held various parts of the proceedings, including arguments, statements, motions, grounds for motions, were stated orally by counsel on behalf of the Respondent and on behalf of other parties in this proceeding, which arguments, statements, motions and grounds of motions were omitted from the record at the direction of the Trial Examiner and over the objection of counsel for Respondent, and also for the reason that the various statements and remarks and reasons for rulings and parts of rulings were stated orally by the Examiner at this day's morning session, which statements were omitted from the record at the direction of the Trial Examiner and over the objection of counsel; for the reason that the record as it now stands is incomplete and does not contain a full statement of the proceedings in this hearing up to this time; for the reason that on the record as it now stands Respondent cannot secure a proper review of these proceedings before any appellate body because of the omissions made at the direction of the Examiner; and Respondent further says in support of this motion that the motion is made during the same day these omissions occurred, and at the first opportunity of Respondent for so moving.

"Trial Examiner Paradise: The Examiner will state for the record at this time that in his opinion the grounds for all motions which have been made amply appear in the record, and that all the parties had ample opportunity to state the grounds for their motions in the record; that the record also amply shows the grounds for all rulings which the Examiner made. Therefore, the motion is denied.

"I also wish to state for the record at this time that during the course of this proceeding I will not permit the record to be encumbered by long objections which are not necessary, and I will not permit the record to be encumbered by long arguments which are not necessary to state the grounds upon which any objection or motion is made. I intend to keep the record as short and clear as possible.

"Mr. Barr: Let the record show that the Respondent saves an exception to the ruling of the Examiner.

"Mr. Enggas: Let the record show that

footnote[3] reveals further action by the examiner resulting in an imperfect record here.

**Unfair Restriction of Examination of Witnesses.** On May 21, 1937, a committee representing the Union, claiming that the Union included over fifty-one per cent of the employeés at the plant, visited the plant manager and demanded recognition as the bargaining representative. Not receiving recognition and being informed that C. I. O. claimed the right of representation,

the Respondent now requests the Trial Examiner to put in this record every statement that is made by anyone at this hearing, including motions of counsel for interveners and counsel for the Board, and responses, and every utterance or statement made in this hearing.

"Trial Examiner Paradise: Do you want a ruling on that?

"Mr. Enggas: Yes.

"Trial Examiner Paradise: I will rule on each case as it occurs.

"Mr. Enggas: Show an exception to the ruling of the Trial Examiner.

\* \* \* \* \* \*."

3 "Trial Examiner Paradise: I am inclined to feel, as I stated before, that this line of questioning has no particular relevancy to the issues in this case. However, with a desire to give counsel a proper amount of latitude to cross-examine I will permit the question if the witness can answer it.

\* \* \* \* \* \*

"(Discussion off the record.)

"Trial Examiner Paradise: Put this in the record, and I don't want to be interrupted until I am through.

"The remarks of Mr. Foster and everything that was said by Mr. Enggas and Mr. Ess and the Examiner are excluded from the record upon the instructions of the Examiner as having been improper, having no bearing upon the issues in this case and no relevancy to anything which is now before the Examiner.

"The record will also show that the Examiner instructed the Reporter to include in the official report only such matters as the Examiner considers proper to be included in such official report, and that the Examiner instructed the Reporter that a violation of these instructions would be reason for removing the Reporter from his position in this case.

"The Examiner has also warned Mr. Enggas, of counsel for Respondent, that his persistence in ordering the Examiner as to what matter is or is not to be contained in the record, his remarks to the Reporter instructing the Reporter to violate the orders of the Examiner, and his general attitude towards the Examiner have been contemptuous, and that repetition of such conduct will be warrant for excluding Mr. Enggas from further participation in these proceedings.

"Now I will permit counsel for the Respondent to make a statement of any objection which he has to this statement of mine, and the grounds for such objection. One counsel for the Respondent will be permitted this privilege.

"Mr. Ess: Will you read the statement that the Examiner has made so that I may have it all in mind? (The statement by the Examiner was read by the Reporter.)

"Mr. Ess: Counsel for ,the Respondent objects to the ruling just made by the Examiner upon the statement of facts therein asserted for the reason that the Examiner is not the Court of last resort in this hearing, and that the determination of what is material and what is not material, in the first instance, is for the National Labor Relations Board and, in the second instance, to any Court to which these proceedings ultimately may go, a fair and accurate record of the proceedings had before this Examiner cannot be had unless everything that occurs in this proceeding may be made a part of the record in order that the reviewing body and reviewing Court may have an accurate picture of what took place here. If the Examiner is going to exercise the uncontrolled prerogative to say what goes in the record and what does not go in the record, then this Respondent will be denied the right of presenting its case, based upon an expurgated record of the proceedings had before the Examiner.

"Now, at the inception of these proceedings there were some parts of the record in this cause which were not contained in the record, and to which counsel for Respondent objected to the action of the Examiner in directing that they be excluded from the record. For that reason counsel for Respondent moved that the proceedings be dismissed because a record of the proceedings was not being had as required by law and so that this record could be presented, being a full, accurate and true record, to the National Labor Relations Board and ultimately to the Courts. We renew that motion at this time, Mr. Examiner, to dismiss these proceedings because we do not have, under the orders of the Examiner, a full, true and correct copy of the record in this case and will not have and, therefore, we are denied the right of

the Union filed a petition of certification with the Regional Director on the next day, May 22, 1937. May 24, 1937, C. I. O. demanded recognition and, being refused called a strike, which began on May 25th and was yet in progress during the hearing. This strike was attended by considerable violence, destruction and intimidation in the plant by C. I. O. members. On May 26 and 27 there were meetings of about fifty officers and workers (called by the plant manager) in a downtown office building—there is some confusion as to whether this was the Lathrop Building or the Dierks Building, across the street from the Lathrop Building. Two general officers of the company from Chicago (Mr. Harris and Mr. Bullock) were at one or both of these meetings. Very strong language was attributed, by some of the witnesses, to the plant manager, to Mr. Harris and to Mr. Bullock, in which an offensive epithet was applied to the members of C. I. O. and it was stated that the city did not offer police protection, that the plant would not open under the C. I. O. but only if the company had its own way. Joe Collins (an engineer at the plant) had been one of the main forces in organization of the Union.

On cross-examination of witness Thompson (called by the Board), who had testified to the above statements by Weaver, Harris and Bullock, and for the obvious purpose of offering an explanation for some of this extreme language, there occurred the following:

"Q. (By Mr. Ess) Do you recall, Mr. Thompson, the day you had this meeting that you say was in the Lathrop Building— that that was the day Joe Collins was slugged? A. I couldn't say. I know Mr. Weaver told us that day.

"Mr. Broderick: I object to that line of questioning. This witness didn't explain anything happened to Joe Collins.

"Q. (By Mr. Ess) But you had heard that day Mr. Collins had been slugged?

"Mr Broderick: I object to that question if the Examiner please.

"Trial Examiner Paradise: Objection sustained. You will have every opportunity in cross-examination. The last question regarding Joe Collins was objected to, and the objection is sustained.

"Mr. Ess: We object to the ruling of the Examiner in curtailing the scope of the inquiry on cross-examination.

"Trial Examiner Paradise: Proceed, Mr. Ess, please.

"Q. (By Mr. Ess) As a matter of fact wasn't the word brought into that meeting that Joe Collins had been slugged by some C. I. O. people?

"Mr. Broderick: Objection.

"Trial Examiner Paradise: Objection sustained.

"Mr. Ess: The further line of inquiry upon this subject is precluded by the Examiner?

"Trial Examiner Paradise: Yes.

"Mr. Ess: The Respondent offers to prove at this time that at the time of this alleged statement, or on the day of this

making a record. We are denied due process of law.

"Furthermore, I wish to except to the attitude manifested by the Examiner at the time he directed that these remarks be excluded. I am speaking from my personal impression that the attitude of the Examiner was distinctly hostile; in fact, so hostile that he could not, in my opinion and belief, accord to this Respondent a fair and impartial trial in these proceedings; and I therefore renew my motion that these proceedings be dismissed at this time.

"Trial Examiner Paradise: Adjourn until 9 o'clock Monday morning.

"Mr. Ess: What is the ruling of the Examiner?

"Trial Examiner Paradise: The motion is denied with an exception to the Respondent.

"The Examiner will state with reference to counsel's reference to the Examiner's attitude of hostility that the Examiner was frankly incensed at the highly contemptuous conduct of Mr. Enggas.

"Mr. Ess: Let me make one further suggestion while we have this fresh in our recollection, if the Examiner please. Without having the record show, however, what Mr. Enggas' statements were. Now, the Examiner has written into this record that the conduct of Mr. Enggas was contemptuous but he has directed that all of the conversations and other matters which took place be expurgated from the record, so I do not feel that that conduct on the part of the Examiner accords Mr. Enggas the fair treatment to which he is entitled as a member of this Bar.

"Trial Examiner Paradise: I am satisfied with the record as it stands. We will have no further discussion.

"Mr. Ess: Exception."

alleged statement made by Mr. Weaver and the statement was made by Mr. Bullock, as related by the witness, that Joe Collins, an employe of Montgomery Ward, had been slugged.

"Mr. Broderick: The offer is objected to.

"Mr. Ess: Do I understand that offer is refused?

"Trial Examiner Paradise: The offer to prove that by cross-examination of this witness—the objection to the offer is sustained on the ground that it is not proper cross-examination.

"Mr. Ess: What is the rule of cross-examination before this Board? Is it the same as pertains in the Federal Court?

"Trial Examiner Paradise: The general rule respecting cross-examination.

"Mr. Ess: The general rule respecting cross-examination in the courts in Missouri is that you can cross-examine on any subject.

"Mr. Broderick: I object to this line of testimony by counsel as argumentative.

"Trial Examiner Paradise: I have made my ruling. Proceed."

Further on in connection with the same witness, there appears the following:

"Mr. Woodruff [one of counsel for intervener]: May I cross-examine the witness on this building? The Lathrop Building happens to be the building where my office is located.

"Trial Examiner Paradise: I don't believe there is anything in this witness' testimony that bears upon the scope of your interest in the case, and therefore I will deny your request to cross-examine the witness.

"Mr. Woodruff: May I say this one thing? It is obvious from the examination of counsel for the Labor Board that he is seeking to create the impression that this witness went to my office, which is in the Lathrop Building.

"Trial Examiner Paradise: Now, Mr. Woodruff, if you want to testify you will take the stand. I will not have you making any statements of fact on the record in this manner. You have no right to cross-examine the witness or comment on the testimony of this witness.

"Mr. Woodruff: I except to the ruling of the Examiner. I except to the attitude of the Examiner—the attitude of hostility of the Examiner, and the arbitrary attitude of the Examiner. The examination of the witness discloses that counsel for the Labor Board is trying to show that this witness was meeting at my office; and I have a right to show the facts about it, and I except to the ruling of the Examiner.

"Trial Examiner Paradise: Do you wish to take the witness stand, Mr. Woodruff?

"Mr. Woodruff: I wish to state the reasons why I desire the right to cross-examine this witness.

"Trial Examiner Paradise: Your request is denied.

"Mr. Woodruff: I see it is.

"Trial Examiner Paradise: And any testimony or statements of fact which you may wish to make will be required to be made under oath in this proceeding. When the time comes you make take the witness stand and testify.

"Mr. Woodruff: I object to the statement of the Examiner, and I except to it, and I except to the ruling that he has made that counsel cannot make any statement except as a witness.

"Trial Examiner Paradise: Overruled.

"Mr. Woodruff: It is a denial of my right to participate freely in this hearing, and my right to represent my client, and a denial of due process of law.

"Trial Examiner Paradise: Are there any further grounds of your objection?

"Mr. Woodruff: Those are sufficient.

"Trial Examiner Paradise: Objection overruled. Any further questions?"

Two of the main lines of inquiry by the Board were to show Union activity at the plant during working hours and that such was actively participated in by supervisors (who worked with but had directory power over their fellows and the right to report for discipline or discharge to their superiors). The opposing contentions by the company and the intervener were that C. I. O. was active in the plant, that some supervisors favored C. I. O. and that the management took no part in the struggle between Union and C. I. O. for membership mastery. The cross-examination of one witness (Gladys Sullivan) called by the Board, is as follows:

"Q. Who was encouraging you to join the C. I. O.? A. Myself.

"Mr. Broderick: I object to that as immaterial and move to strike the answer out.

"Trial Examiner Paradise: The witness answered it. I will let it stand.

"Q. Who afforded you the opportunity to join?

"Mr. Broderick: Same objection. Whether or not the witness did or did not join the C. I. O. in or outside of the plant has no bearing on the issues in this case.

"Trial Examiner Paradise: Objection sustained.

"Q. (By Mr. Enggas) Do you know the name of the person that encouraged you or gave you the opportunity to join there at the plant?

"Mr. Foster: I object to that as entirely irrelevant.

"Trial Examiner Paradise: Objection sustained.

"By Mr. Enggas:

"Q. Do you have any personal objection to telling me the name of the person who gave you the opportunity? A. I asked for a card.

"Q. You asked for a card? A. Yes, sir.

"Q. Who had cards there for your purpose?

"Mr. Foster: Same objection. I object to this line of examination as being irrelevant and immaterial.

"Trial Examiner Paradise: Sustained.

"Mr. Ess: I insist that the rulings of the Examiner will deprive the Respondent of the right of cross-examination, and as a result Respondent is deprived of the hearing which it is entitled to have under the Federal Constitution; and the action of the Examiner constitutes a denial of due process and a deprivation of a hearing as guaranteed by the Federal Constitution; and for that reason I again urge that this complaint be dismissed.

"Trial Examiner Paradise: Is that a Motion, Mr. Ess.

"Mr. Ess: Yes, sir.

"Trial Examiner Paradise: Denied.

"Mr. Ess: Exception.

"By Mr. Enggas:

"Q. How many persons did you know there at the plant on the day of the strike that had these membership cards in the C. I. O. that they were passing out or were there for the purpose of securing members in the C. I. O.?

"Mr. Foster: Same objection.

"Trial Examiner Paradise: Objection sustained.

"Mr. Foster: Counsel for the Board requests that the Examiner admonish counsel for Respondent to discontinue this line of cross-examination which is purely irrelevant.

"Trial Examiner Paradise: I have made my ruling, Mr. Foster.

"Mr. Enggas: I might state that in this complaint no names are given, and we were unable to prepare a defense in this case because we did not know, because of the blanket nature of the charge, just what the proof would be. We are attempting a cross-examination of the witness to find out what it is all about; and we are not given an opportunity to find out the names of the persons that were active there in the plant doing organization work. The charge is that one of the Unions was company dominated; and if the evidence should disclose that both Unions were operating full force there in the plant, then it would have a tendency to show that there was no domination by the Respondent. Now, if we can't in examination find out the facts, I don't know how we are going to make the proof.

"Trial Examiner Paradise: I don't intend to permit you, Mr. Enggas, to inquire as to the identity of persons who are members of the C. I. O., or who are going to do organization work for the C. I. O., unless they are witnesses in this case.

"Mr. Enggas: Exception.

"Mr. Ess: Let me inquire further. Does this ruling go to the extent that you will not permit inquiry regarding C. I. O. activities in the plant?

"Trial Examiner Paradise: It seems that I have permitted plenty of such inquiry.

"Mr. Ess: Do I understand that henceforth it is to be denied?

"Trial Examiner Paradise: I have made my ruling.

"Mr. Ess: It is not clear to me.

"Trial Examiner Paradise: Mr. Enggas has asked a series of questions calculated to obtain the identity of workers who were doing organization work for the C. I. O., or who were members of the C. I. O.

"Mr. Ess: The names of the persons involved—the purpose of the inquiry is to develop the facts. The Examiner in his

ruling here has denied us the privilege of developing the facts. This is the only hearing and the only Board at which those facts may be developed. We are denied that right; so I again move that these proceedings be dismissed because we have not been accorded a fair hearing as the law requires.

"Trial Examiner Paradise: You will have ample recourse in the event that I commit error, Mr. Ess. I have made my ruling. Proceed.

"Mr. Ess: Exception.

\* \* \* \* \* \*

"Q. Are you still a member or not? A. I am a member of the C. I. O."

Claude Nichols, called by the Board, who was an active C. I. O. had testified to damaging statements made by two department heads in the retail store. In cross-examination of him occurred the following:

"By Mr. Enggas:

"Q. Where did you work before you went to work for Montgomery Ward & Company?

"Mr. Foster: Same objection.

"Trial Examiner Paradise: Sustained.

"Mr. Ess: Now at this time I want to again except to the ruling of the Examiner, not only generally but specially again on the grounds that the rulings of the Examiner are curtailing and restricting the right of Respondent to a cross-examination of hostile witnesses in order to ascertain the facts which are germane to making a defense to this complaint and also facts affecting the credibility of the witness and also facts which were testified to in the direct examination and concerning which cross-examination is now denied. For these reasons I move the dismissal of the complaint.

"Trial Examiner Paradise: Objection overruled.

"Mr. Ess: Exception.

\* \* \* \* \* \*

"By Mr. Enggas:

"Q. How long did you work for this company that gave you a raw deal?

"Mr. Broderick: Mr. Examiner, I submit that counsel for the Respondent is attempting to elicit in an indirect manner what he has already attempted to elicit in a direct manner, and which was objected to and the objection sustained.

\* \* \* \* \* \*

"Trial Examiner Paradise: Yes. I am going to sustain the objection and an exception to the Respondent.

"Mr. Enggas: I can't find out this company he has worked at that he says he doesn't want me to find out?

"Trial Examiner Paradise: You have got his employment card. Go ahead.

"Mr. Enggas: How do you know that?

"Trial Examiner Paradise: The witness has testified under oath.

"Mr. Enggas: We can't even get in the plant without permission from C. I. O. I can't even get in that plant, as a matter of fact. I tried to get in the plant the other day and I can't get in. How am I going to get the records?

"Trial Examiner Paradise: I don't know anything about that.

"Mr. Enggas: I do. I have been denied permission.

"Trial Examiner Paradise: Objection sustained."

Hostile attitude toward witnesses. Joe Collins was one of, if not the prime mover in starting the idea and the organization of the Union. He was called as a witness by the Board. In the examination in chief, counsel for the Board had started to question about employment of an attorney by Collins and the small group of initial organizers of the Union. After a few questions by counsel, the examiner took over the examination. In the course of this questioning by the examiner, occurred the following:

"By Trial Examiner Paradise:

"Q. What conversation took place at this meeting at your home on the 9th of May about hiring Mr. Gard as your lawyer? A. My recollection of that is that we knew we should have a lawyer to guide us in our organization, because none of us knew anything about the National Labor Relations Act [29 U.S.C.A. § 151 et seq.] and not even the lawyers seemed to know what it was all about. We hoped to have him at our meeting on May 9th, but that was Mother's Day and it was hard to get anybody there. The general agreement was that we should engage counsel right at the start.

"Q. Who first raised the question about the National Labor Relations Act? A. I think I did.

"Q. Had you read the Act? A. Yes.

"Q. When did you read it? A. I read it on Friday before that. That would be the 7th.

"Q. That was the day after you got the idea about the union? A. That is right.

"Q. After reading the Act did you have any doubt in your mind about your right to organize a union? A. Yes. I couldn't interpret the language of the Act.

"Q. *You didn't doubt that the union you were organizing was not a legitimate labor union, did you?* [Italics added.] A. I wanted it to be."

Further on in cross-examination of Collins by counsel for the company occurred the following:

"Q. Now, would you go into some departments and hear nothing but C. I. O., and into other departments and hear nothing but Union of Ward Employees talk? A. Well, there were departments that were pretty solidly both ways.

"By Trial Examiner Paradise:

"Q. Answer the question 'yes' or 'no'.

"Mr. Enggas: I submit that satisfies me and I don't require a 'yes' or 'no' answer to any question.

"Trial Examiner Paradise: I see no necessity for the witness rambling in answer to that question. It is a simple question.

"The Witness: I will say yes.

"Trial Examiner Paradise: All right.

"By Mr. Enggas:

"Q. Now, if you have any explanation that modifies your 'yes' I want it. A. There was some departments that were distinctly C. I. O. and some that were distinctly Employees' Union."

Obvious bias of examiner. Naturally, it requires reading of this entire evidence to get the full perception of the clearly biased attitude of the examiner. Instead of maintaining the impartial position of one who is to determine—in a preliminary stage—the ultimate facts and action thereon, he assumed the place of attorney supporting the complaint.

We do not mean that an examiner is not free to, and should, interrogate witnesses when necessary to elicit or clarify testimony. What we do mean is that, when he does interrogate, he should do so as an impartial participant and not as an advocate endeavoring to establish one side or the other of the controversy before him.

This record is full of instances of hostile and searching examination of witnesses who might be expected to be favorable to the company or the intervener while similar action does not appear as to witnesses favorable to the complainant. The extreme activity of the examiner in questioning of witnesses is quite evident—there is not much hazard in estimating that probably one-half of the pages of this record confined to testimony would show some questions by the examiner. Counsel for the Board seems to have been proficient and this exaggerated participation by the examiner is not commendable —it is likely to, as it did here, shade into partisan activity. There was, also, a distinct hampering of inquiry on the part of the company and the intervener. One instance of this was repeated refusal to allow answers as to membership in the C. I. O. With the issues of fact as they took form here in the evidence, these exclusions were plainly harmful to the company and the intervener in the development of their theories as to the facts. This observation is not made as concerned with an erroneous ruling on introduction of evidence but as, possibly, having a bearing upon the partiality of the examiner. The record is too full of instances showing (with more or less force) the bias of the examiner for them to be included within an opinion. Besides those referred to or quoted earlier in this opinion, others appear in the printed record here at pages 201, 202, 208–212, 219, 220, 251, 252, 310–312, 317, 318, 340–343, 353, 365, 366, 368–370, 378, 380, 409–415, 443, 444, 461–463, 480, 481, 482, 483, 503, 504, 569–572, 582, 599, 600, 609, 613, 617, 618, 652 and 654.

In other instances of labor disputes coming before this Court, the examiners have evinced an understanding of the grave responsibilities of their position and duties. They have endeavored to meet those responsibilities and accord fair hearings. It is unfortunate that there should be exceptions. This is one such.

This fault runs throughout the hearing. These matters were called to the attention of the Board in exceptions filed to the intermediate report of the examiner. They were not recognized nor rectified in any instance. We see no way in which the injustice done by this character of hearing can be righted except by setting aside the order of the Board in entirety and remanding the case to it for a new hearing

before another examiner and a determination by the Board upon the record to be made upon such new hearing. The delay necessary to a new hearing is regrettable but avoidance of delay cannot justify a tolerance of violation of rights fundamental in the administration of justice.

An order will be entered setting aside the order of the Board in entirety and remanding the cause to the Board for a new hearing before another examiner, to be selected by the Board. Such hearing may be upon the complaint as now amended or otherwise.