**NATIONAL LABOR RELATIONS BOARD v. WESTERN CARTRIDGE CO., WINCHESTER REPEATING ARMS CO. DIVISION.**

No. 15.

Circuit Court of Appeals, Second Circuit.

Nov. 3, 1943.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Fannie M. Boyls, Maurice R. Kraines, and Helen F. Humphrey, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Allan Seserman, of Boston, Mass., for respondent.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The United Electrical, Radio & Machine Workers of America, a C. I. O. union, filed charges with the National Labor Relations Board accusing the Western Cartridge Company, Winchester Repeating

Arms Company Division, at New Haven, Conn., with having engaged in unfair labor practices made unlawful by the Wagner Act, 29 U.S.C.A. § 151 et seq. The particular charges with which we are now concerned are alleged violations of § 8 (1) and (3) in the discriminatory discharge of three employees, Amato, Thompson and Cruze, because of their union affiliations and activities. The respondent insists that the findings are not supported by the evidence and that the petition for enforcement should be denied on the additional ground that the trial examiner was so meddlesome and officious that in large part he took over quite gratuitously the role of prosecutor and became so partisan that the respondent was denied a fair hearing.

■ As we and other courts have repeatedly held, following the express provisions of the statute, 29 U.S.C.A. § 160(f), that we cannot weigh conflicting evidence but can only search the record to determine whether there is substantial evidence to support the findings in such cases as this, it will serve no useful purpose here to discuss again that clear limitation on our power. Upon the assumption that it is well understood, we need here do no more than act with due regard for it.

■ There was ample evidence that both Amato and Thompson had before their discharge been active in promoting the cause of the union and that Thompson had been elected its chief steward—all of which the management, plainly anti-union in its attitude, well knew. The reason the respondent gave for the discharge of Amato was his calling a "counsellor of employees," who had the rank of a superintendent without that title, an obscene name. There was apparently credible evidence to support a finding that Amato did do just that, but he denied it and one employee seemingly near enough to have heard him, had he done so, testified that he didn't hear it. The trial examiner saw fit to believe the denial instead of the witnesses who testified that they heard Amato call Bernstein the vile name. The board found likewise. On such conflicting evidence the question of credibility was for the board and its decision established the fact for us. That leaves no adequate reason for the discharge of Amato other than his unionism, of which there was substantial evidence. The inference that this was what brought on his discharge was,

therefore, clearly justified and it was clearly a violation of § 8(1) of the Act.

■ As much may be said about Thompson's discharge. He was a highly skilled man whose services were needed. He was absent from work several days while on his wedding trip and had neglected to ask for the time off in advance. It was shown that had he requested a vacation for that purpose he would have been given one and that his previous record for attendance was good. Obviously it was for the board to decide upon this state of facts whether he was discharged for the lawful reason or the unlawful one, and quite as obviously its decision, once made, is binding upon us.

■ Though the finding as to the discharge of Cruze was not so clearly right on the facts it was well within the field of evidentially supported action where the board has the first and final say. He was a negro with considerable training and experience in skilled machine-shop work. He was employed as a day laborer and soon asked to be transferred to more lucrative work which he was qualified to perform. Though he was promised such a transfer, it was delayed and he had been kept at the same kind of work for about two months before he joined the union and began to urge other employees to join. With a promptness which stands out in sharp contrast to the lack of action respecting his transfer to a better job, the respondent then told Cruze that some of his fellow employees objected to working with him because he was suffering from a venereal disease. He denied that he was and offered to be examined by the respondent's doctor. That was done and the result proved him to have been right in his denial that he was not so afflicted. About a week later he was discharged, however, for the stated reason that his work was not satisfactory and that he had received three reprimands which were usually treated as good cause for discharge. Nothing more need be said on this score than that under the law the board could decide upon such evidence whom to believe and what to believe and that it has established the controlling facts by doing so.

■ The claim that the respondent was not given a fair hearing by the trial examiner raises a much more serious question. Obviously it is of the utmost importance that the board, having been

given such broad power in respect to the facts, should be scrupulously careful to see that the power is exercised with a commensurate sense of what is just and fair and to let its actions demonstrate that it does so. See, Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093; National Labor Relations Board v. Ford Motor Co., 6 Cir., 114 F.2d 905; Inland Steel Co. v. National Labor Relations Board, 7 Cir., 109 F.2d 9. When it undertakes to conduct hearings by a trial examiner or in any other way, its functions as the investigator and prosecutor of charges filed with it should not be confused with its quasi-judicial duty to find and state the actual facts on the basis of substantial, credible evidence impartially weighed. If there is no such evidence to prove the charges it should not hesitate so to find. Such general observations as these could be multiplied and could, of course, be supplemented with like generalities to the effect that whoever hears and decides disputed questions of fact must be alert to see that the record made is as clear and complete as a presentation of all the available and material evidence can make it. It all boils down to the well-known fact that competent men will usually do well in exactly the circumstances where the incompetent do harm with their ineptitude or worse.

The conduct of this trial examiner left much to be desired. Over the obvious reluctance of the board's attorney, he insisted upon going into a matter not covered by the charges filed. That had to do with what had been a company-sponsored association of employees, sometimes called the Plan and sometimes the Council, which turned out to have become so defunct that counsel for the board and for the respondent in the end disposed by stipulation of the apparently inconsequential issue so created. He prolonged the hearings unduly by needlessly taking over the examination of witnesses from an apparently competent attorney for the board who was present to prosecute the charges; and he generally distinguished himself for his over-speaking. In so doing he did much to destroy any faith in his impartiality, and had this been a close case his conduct might have been sufficient cause for a denial of this petition. Montgomery Ward & Co. v. National Labor Relations Board, 8 Cir., 103 F.2d 147. The result was right, and though the trial examiner's conduct

may have caused the respondent needless trouble and expense, whatever harm was done to the cause of good administration of the Act did not make the order itself erroneous. Compare, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129; Bethlehem Steel Co. v. National Labor Relations Board, 74 App.D.C. 52, 120 F.2d 641, 652.

There was the usual cease and desist order which required the offer of reinstatement with back pay to the discharged employees. It was correct in form and substance in those respects. Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217. The remainder was in accord with the stipulation above mentioned.

Petition to enforce granted.