Wayne Eldon ARNDT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15238.

United States Court of Appeals
Fifth Circuit.

May 13, 1955.

Hayden C. Covington, Brooklyn, N. Y., Victor F. Schmidt, Columbus, Ohio, for appellant.

Vernon W. Evans, Jr., Asst. U. S. Atty., Tampa, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

Appellant was convicted for wilfully failing and refusing to report for induction into the armed forces of the United States in violation of the Selective Service Act of 1948, as amended, 50 U.S.C.A.Appendix, § 462, and was sentenced to a term in prison. This appeal is prosecuted and a large number of errors are assigned as having been committed by the lower court.

The facts on which the draft boards acted are these:

Appellant registered September 14, 1948, stating that he was a farmer and was self-employed and about ten months later filled out and filed his questionnaire. The only claim then asserted for exemption was that he was a farm laborer, self-employed, and having some sort of partnership arrangement for the operation of a farm. The blanks in the questionnaire to be filled out by a minister or student preparing for the ministry, and the blanks to be filled by registrants claiming to be conscientious objectors were not filed but were left blank.

In October, 1949, Appellant was classified I-A and so notified, and he promptly asked that an appeal be taken from this classification but no action was taken thereon. Following the engagement of the United States in hostilities in Korea in June, 1950, Appellant was ordered to report for physical examination, whereupon he wrote the local board asking exemption as a conscientious objector and made a personal appearance before the board in the interest of this claim. He was given the special form provided for those claiming to be conscientious objectors, and he filled it out and filed it, stating that he had become a conscientious objector in March, 1950.

October 2, 1950, Appellant made a personal appearance before the local board to plead for his exemption and was advised by the board that the exemption would not be allowed. The board proposed, however, that it would allow Appellant to appeal to the State Appeal Board, and appeal was promptly effected.

The State Appeal Board, feeling that the file did not justify any classification except I-A, referred the file to the Department of Justice which in turn caused

an investigation to be made by the FBI, followed by a hearing before a duly appointed hearing officer, in which hearing Appellant participated. These proceedings consumed approximately two years after the classification by the local board so that it was September, 1952, before the Department of Justice sent to the State Appeal Board its recommendation that the claim of exemption as a conscientious objector be not sustained. That Board classified Appellant I-A, and in due time he was ordered by his local board to report for physical examination.

Thereupon, Appellant requested that the case be reopened by the local board, and that he be classified as a minister. The local board reviewed the evidence submitted by Appellant in support of his claim for reopening but declined to reopen the case on the ground that the evidence submitted did not justify the classification requested. The local board then ordered Appellant to report for induction. Appellant reported but declined to be inducted, and upon being told to await further instructions, left the induction station without authority, following which action Appellant was indicted and was convicted by the court trying the case without a jury, by agreement of the parties.

█ Appellant begins his argument with an extended review of the evidence in an attempt to sustain the contention that the denial by the appeal board of his claim for exemption as a conscientious objector was without basis in fact, so that the court was without jurisdiction to enter a judgment of conviction. We are not tempted to follow Appellant in this argument. The draft boards gave full and careful consideration to all of Appellant's claims in a hearing extended over a period of four and one-half years, and the District Judge granted a full hearing and announced his findings of fact in great detail and his conclusions of law based upon a careful considera-

tion of the facts and the law before him. Under the tests spelled out by the Supreme Court in Witmer v. United States 348 U.S. 375, 75 S.Ct. 392, the lower court was amply justified in holding that there was affirmative evidence in the record to support the findings and orders of the draft boards.[1]

█ Under the authority of the Witmer case, supra, Appellant's contention that the local board should have reopened his case for the hearing of his claim to ministerial exemption also falls. The local board actually considered all of the evidence submitted by Appellant and, in legal effect, his rights were fully protected by the consideration given his claim by the local board regardless of whether that board tagged the hearing actually given as a reopening or not.

█ A different result is reached when the record is examined to ascertain whether the proceedings before the draft boards were conducted in obedience to constitutional and legal requirements, and the judgment must be reversed for failure so to do. These boards have been invested with great authority over the lives and actions of the people, and that authority must be exercised only after scrupulous observance of the protective safeguards provided by the Constitution and Statutes.

█ Appellant takes the position that his rights were disregarded when the Department of Justice failed to furnish him a fair summary of adverse information appearing in the report of the FBI. That report had been used in the hearing conducted by the Department of Justice hearing officer and constituted an important step in that procedure. This investigation was made in obedience to the requirement of Section 6(j) of the Selective Service Act,[2] that the hearing conducted by the Department of Justice would be conducted "after appropriate inquiry". The Supreme Court had indi-

---

1. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132.

2. 62 Stat. 604, 613, 50 U.S.C.A.Appendix, § 456(j).

cated in 1953 [3] that the furnishing of this fair résumé was an essential ingredient of a fair hearing. In the Nugent case, the Supreme Court had declined to condemn the hearing there involved for the reason that no part of the FBI report was transmitted to the appeal board and because Nugent failed to make any request for the summary.[4]

In this case the court below found that Appellant had made a request for the résumé of the adverse evidence in the FBI report, and that said résumé was not given to him. The District Court held, however, based upon what it conceived to be the holding of the Nugent case, that the failure to furnish the résumé was harmless. Appellant contends that the recommendation of the Department of Justice was based upon material contained only in the FBI report, and the evidence tends to bear out this contention.

This question might be difficult of solution if it were not for the fact that the Supreme Court rendered a further opinion amplifying the holding of the Nugent case.[5] In that case the Supreme Court stated that the furnishing of the résumé of the FBI report could not be viewed "as a matter of grace within the Department's discretion, but rather as an essential element in the processing of conscientious objector claims." That case further teaches that waivers of this right will not be lightly assumed, and that a registrant to whom the summary has not been furnished may claim that he has been denied a fair hearing without the necessity on his part of specifying "the precise manner in which he would have used this right—and how such use would have aided his cause". The failure to observe the mandate of the statute is therefore fatal to the action taken by the Selective Service Boards.

Appellant is on equally sound ground in his contention that his constitutional rights were violated by the failure of the Department of Justice to furnish him a copy of the recommendation of the Department to the appeal board, so that he might be afforded an opportunity to reply. The procedural requirements enumerated in the statute were complied with. Upon the filing of Appellant's conscientious objector claim, the Appeal Board referred the claim to the Department of Justice for inquiry and hearing. The Department of Justice caused the appropriate inquiry to be made and had a hearing which Appellant was notified to attend and which he did attend. The Department recommended that the claim of Appellant to conscientious objector status be not sustained; and acting thereon, the appeal board rejected the claim and ordered Appellant inducted into the service. This action formed the basis of the prosecution.

The regulation promulgated to carry out the statutory scheme [6] required the Appeal Board to place in the Cover Sheet of the registrant both the letter containing the recommendation of the Department of Justice and the report of the hearing officer.

In its findings of fact and conclusions of law, the District Court found that no notice was given Appellant of the adverse recommendation of the Department of Justice and correctly found "that there is nothing in the Act or appropriate regulations to require such notice", and that failure to give such notice "does not amount to a denial of due process".

In concluding that the silence of the Act and the regulations obviated the necessity for notice to Appellant, the District Court was in error. The "hearing" provided for in the Act carries the connotation that it is to be such a hearing as conforms to the concept of such

3. United States v. Nugent, 1953, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417.

4. See Note 10 of 346 U.S. at page 7, 73 S.Ct. at page 995.

5. Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 401.

6. Section 1626.25 of the Selective Service Regulations, 32 CFR, Section 1626.25 (d).

488

a proceeding under the American System. A registrant would enter a hearing before an appeal board under a serious handicap unless he was informed in advance of the recommendation which the Department of Justice would make and the basis therefor. The courts had long held that such a notice in similar situations was necessary to provide the rudiments of fair play lying at the base of our System.[7] And the whole question has been laid at rest by the decision of the Supreme Court in Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 415, where it is held:

"We hold that the overall procedures set up in the statute and regulations, designed to be 'fair and just' in their operation, 62 Stat. 605, 50 U.S.C.App. § 451(c), 50 U.S.C.A.Appendix, § 451(c), require that the registrant receive a copy of the Justice Department's recommendation and be given a reasonable opportunity to file a reply thereto."

The judgment of the District Court is reversed with instructions that an order be entered acquitting the Appellant.

7. The Supreme Court twice reversed decisions of District Courts upholding an order of the Secretary of Agriculture issued as the result of administrative proceedings in Morgan v. United States, 1936, 298 U.S. 468, 56 S.Ct. 906, 80 L. Ed. 1288, and 1938, 304 U.S. 1, 58 S.Ct. 773, 775, 999, 82 L.Ed. 1129. The gist of those decisions was that "in administrative proceedings * * * the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play * * * those fundamental requirements of fairness which are of the essence of due process * * *." A syllabus from the second decision epitomizes the holding of the Court:

"The right to a 'full hearing' embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."

Again in Ohio Bell Telephone Co. v. Public Utilities Comm. of Ohio, 1937,

301 U.S. 292, 304, 57 S.Ct. 724, 730, 81 L.Ed. 1093, the Supreme Court expressed this same idea:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. * * * Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' of a fair and open hearing be maintained in its integrity. * * * The right to such a hearing is one of 'the rudiments of fair play' * * * as a minimal requirement. * * * There can be no compromise * * * when that minimal requirement has been neglected or ignored."

And compare the decisions of this court in N. L. R. B. v. Cherry Cotton Mills, 5 Cir., 98 F.2d 444, City of El Paso v. Texas Cities Gas Co., 5 Cir., 100 F.2d 501 and City of Meridian, Miss. v. Mississippi Valley Gas Co., 5 Cir., 214 F. 2d 525.