# Gottshall v. Batt

*Edward C. First, Jr.,* of *McNees, Wallace & Nurick, William S. Livengood, Jr.,* of *Livengood, Braucher & Stroup,* and *Krawitz & Woltjen,* for appellants.

*Thomas D. McBride,* Attorney General, and *David C. Harrison* and *Leon Ehrlich,* Deputy Attorneys General, for Commonwealth.

NEELY, J., May 12, 1958.—These appellants have filed eight appeals from two directory orders of the Secretary of the Department of Labor and Industry dated January 24, 1958, fixing minimum wages for women and minors in restaurants, hotels and motels as defined in the orders. Appellants operate amusement parks, restaurants, hotels, seasonal resort hotels and motels, all of which are affected by the department's orders. Appellees are the secretary and his deputy.

### The Statute

The department acted under the provisions of the Act of May 27, 1937, P. L. 917, 43 PS §331a, et seq. This appeal is prosecuted under section 12 of the act, 43 PS §331l. The statute, as its title shows, was passed, inter alia, "for the protection of the health and welfare of women and minors by regulating under the police power the minimum fair wages which shall be paid by employers; providing for wage boards, and defining the powers and duties of such boards, and of the Department of Labor and Industry; . . ."

Section 2(7) of the act, 43 PS §331b(7), defines a fair wage to "mean a wage fairly and reasonably commensurate with the value of the service or class of service rendered."

Section 5 of the act, 43 PS §331e, provides that the secretary and the wage board, "without being bound by any technical rules of evidence or procedure, may—

"(1) Take into account the cost of living, and all

other relevant circumstances affecting the value of the service or class of service rendered.

"(2) Be guided by like considerations as would guide a court in a suit for the reasonable value of services rendered where services are rendered at the request of an employer without contract as to the amount of the wage to be paid.

"(3) Consider the wages paid in the Commonwealth for work of like or comparable character by employers who voluntarily maintain minimum fair wage standards."

It is provided in section 4 of the act, 43 PS §331d, that the department shall have power to cause an investigation to be made of wages being paid to women or minors in any occupation, and, where they are receiving wages that are less than sufficient to maintain their health and efficiency, the department is empowered in appropriate circumstances to appoint a wage board to report upon the establishment of minimum fair wages for such women or minors in their occupation or occupations.

Section 6 of the act, 43 PS §331f, makes provision concerning the composition of the board and its manner of functioning. Section 6(3) of the act 43 PS §331f(3), provides that "A wage board shall have power to administer oaths and to require by subpoena the attendance and testimony of witnesses and the production of all books, records, and other evidence relative to any matters under investigation. Such subpoenas shall be signed and issued by a member of the wage board, and shall be served and have the same effect as if issued by the department under the authority vested in it by the act, approved the ninth day of April, one thousand nine hundred twenty-nine . . . and designated as the Administrative Code of one thousand nine hundred twenty-nine."

Section 7 of the act, 43 PS §331g, provides for the submission of the board's report and recommendations to the department. If the report is rejected, the matter is to be resubmitted to the wage board or a new board is to be appointed. If the report is accepted, it is to be published together with such regulations recommended by the board "as the department may approve." The department then shall give notice of a public hearing "at which all persons in favor of or opposed to the recommendations contained in such report . . . may be heard." Within 10 days after the hearing, it is provided that the department shall approve or disapprove the report and, if approved, the department shall make a directory order.

### The Administrative Procedure

A wage board was constituted (referred to in the record as the Restaurant, Hotel and Motel Minimum Wage Board) to determine minimum wages for women and minors in these industries. The organizational meeting was held in Harrisburg, October 29, 1957. Subsequently, at four meetings of the board, evidence and testimony was presented. These meetings were held: Allentown, November 18, 1957; Philadelphia, November 19, 1957; Pittsburgh, November 22, 1957, and Harrisburg, December 6, 1957. Considerable publicity was given to these meetings, although the amusement park industry contends that they were not notified, since the publicity referred to restaurants, hotels and motels. There appears to have been no testimony offered by the members of the motel industry. One witness testified in behalf of the hotel industry. A number of witnesses testified for the restaurants.

The wage board made its recommendations to the Secretary of Labor and Industry, whereupon a depart-

mental hearing was called for Harrisburg on January 14, 1958. At the departmental hearing there was a general discussion. The proponents and opponents of the order were permitted to make statements. Some of the appellants were represented by counsel at that hearing who spoke in behalf of their clients and engaged in the discussions that transpired there. No sworn testimony was taken at this hearing.

Following this departmental hearing, the secretary of the department filed his directory minimum wage order no. 2 covering minimum wages for women and minors in hotel and motel occupations, and likewise on the same date filed his directory minimum wage order no. 3 providing minimum wages for women and minors in restaurant occupations.

### Discussion

At the first public hearing of the wage board in Allentown, Pa., on November 18, 1957, the right of cross-examination was denied as follows:

"Mr. First: May I ask a couple of questions?

"The Chairman: No. If I give you that opportunity then the rest of the people here would have the privilege of cross-examining the witness.

"Mr. First: I am not going to cross-examine him, just wanted to ask him a couple of questions, if you don't mind.

"The Chairman: Well, I mind. I don't want to start that. If I permit you to cross-examine the witness then, of course, I couldn't exclude anyone else in the world from doing the same thing.

"Mr. First: I thought the purpose of these public hearings was to permit any interested party to ask any questions of anyone that was giving pertinent information.

"The Chairman: I don't think very many hearings

are conducted in that manner, at least, I have never heard of one.

"Mr. First: I never heard of one that wasn't.

"The Chairman: I have never heard of one that was.

"Mr. First: Let us note an exception to your refusal.

"The Chairman: All right. I wanted it known, though, that we will entertain any question that you want to submit to the Board.

"Mr. First: I can't anticipate the questions I ask because I don't know what the answers will be and then I wouldn't know what my next question would be.

"The Chairman: You don't want to give me a line on the inquiry that you wanted to pursue?

"Mr. First: I say that I have the same right as I would at a deposition. We have facts that we presented and this is an informal hearing and until we get an answer to a question we wouldn't know what our next question would be. To do that would be a completely unrealistic thing.

"The Chairman: I am sorry, but I will have to stand on that because I don't want to open up these hearings to any person to cross-examine witnesses. I can't permit one to do it unless I permitted all to do that. I think I have made it clear that if you will supply me with the type of question you wish I think we will be able to develop the information you desire because we are happy to develop the information ourselves."

Appellants challenge these orders because they say, inter alia:

1. The directory orders are unreasonable, confiscatory and discriminatory in applying to diverse industries; in failing to give effect to geographical differentials within an industry; in failing to properly classify employes subject to the order.

2. Defendants were required under the act to appoint separate boards for each industry and were in error in appointing one wage board to prescribe minimum wages for hotels, seasonal resort hotels, motels, restaurants, amusement parks and other unidentified industries having diverse interests and problems.

3. They were denied the right to cross-examine witnesses.

4. The wage board, in making its recommendations, and the department, in entering the directory orders, accepted as evidence extensive data that had not been offered for the record.

5. The orders were unsupported by any findings of fact.

6. No notice was given of the hearings to those appellants who are part of the amusement park industry, since the notices were to hotels, motels and restaurants.

7. The board was not properly composed because all classes of industry covered by the wage orders were not represented.

Appellants argue that their industries, viz., hotels, seasonal resort hotels, motels, restaurants and amusement parks, are so different in their operation and present such a diversity of problems that the department's orders applying with uniformity to these industries, and other dissimilar industries as well, are unreasonable and discriminatory. They contend that separate boards for their different industries should have been set up to make appropriate orders pertaining to the particular problems of these diverse industries. They argue that not only are the industries diverse, but that within a given industry the operations are so different, e.g., a hotel in Sunbury compared to a hotel in Philadelphia, that the orders in their State-wide effect were unreasonable, confiscatory and discriminatory. It is contended that there should

have been operational zones set up in the orders which would give effect to differences in local conditions and provide wage differentials. Appellants contend that there was not a proper classification of employes in their industries.

Appellants in their briefs and at the oral argument challenge the personnel of the board. We do not have jurisdiction in this appeal to dispose of the factual questions pertaining to the composition of the board. Furthermore, we believe that appellants are too late now to challenge this board which functioned to the extent of making its report to the secretary, as required by the act, appellants never having made a direct attack in court upon the authority of the board to function.

Some of the appellants complain of the absence of appropriate regulations, and at least one of the appellants complains that adequate notice was not given of the hearings before the wage board. Appellants contend that in violation of due process of law (1) they were denied the right to cross-examine witnesses at the hearings before the wage board, and (2) that extensive data has been included in the record which they have had no opportunity to see or examine and of which they had no knowledge until after the record was filed in this court on this appeal.

These appellants all contend also that the directory orders of the department are invalid and violate due process because of the failure of the secretary to make any findings of fact supporting its orders. It is necessary, then, to consider the contentions concerning due process at the very threshold of this controversy.

In Morgan v. United States, 298 U. S. 468 (1936), the Supreme Court of the United States reversed the decree of the district court, wherein that court had refused to enjoin the enforcement of an order of the Secretary of Agriculture. The secretary's order fixed

maximum rates to be charged by market agencies for buying and selling livestock at the Kansas City Stock Yards: Packers and Stockyards Act of August 25, 1921, 42 Stat. 159, 7 U. S. C. §§181-229. The court remanded the case for further proceedings. In its opinion, after stating the contentions of plaintiff on the merits, the Supreme Court proceeded to dispose of the case on the basis of the invalidity that inhered in the procedure before the Secretary of Agriculture. The court said, at pages 473, 479 and 480:

"Before reaching these questions (the merits) we meet at the threshold of the controversy plaintiffs' additional contention that they have not been accorded the hearing which the statute requires. They rightly assert that the granting of that hearing is a prerequisite to the making of a valid order.[1]

". . . What is the essential quality of the proceeding under review, and what is the nature of the hearing which the statute prescribes?

"The proceeding is not one of ordinary administration, conformable to the standards governing duties of a purely executive character. It is a proceeding

---

[1] The applicable statute involved in the Morgan case reads:

"Sec. 310. Whenever after full hearing upon a complaint made as provided in section 309, or after full hearing under an order for investigation and hearing made by the Secretary on his own initiative, either in extension of any pending complaint or without any complaint whatever, the Secretary is of the opinion that any rate, charge, regulation, or practice of a stockyard owner or market agency, for or in connection with the furnishing of stockyard services, is or will be unjust, unreasonable, or discriminatory, the Secretary—

"(a) May determine and prescribe what will be the just and reasonable rate or charge, or rates or charges, to be thereafter observed in such case, or the maximum and minimum to be charged, and what regulation or practice is or will be just, reasonable, and nondiscriminatory to be thereafter followed; . . ."

looking to legislative action in the fixing of rates of market agencies. And, while the order is legislative and gives to the proceeding its distinctive character . . . , it is a proceeding which by virtue of the authority conferred has special attributes. The Secretary, as the agent of Congress in making the rates, must make them in accordance with the standards and under the limitations which Congress has prescribed. Congress has required the Secretary to determine, as a condition of his action, that the existing rates are or will be 'unjust, unreasonable, or discriminatory.' . . . (There are) fundamental procedural requirements. There must be a full hearing. There must be evidence adequate to support pertinent and necessary findings of fact. Nothing can be treated as evidence which is not introduced as such. . . . Facts and circumstances which ought to be considered must not be excluded. Facts and circumstances must not be considered which should not legally influence the conclusion. Findings based on the evidence must embrace the basic facts which are needed to sustain the order. . . .

"A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding. Hence it is frequently described as a proceeding of a quasi-judicial character. The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely

executive action. The 'hearing' is the hearing of evidence and argument." (Parentheses supplied)

And the court for the second time reversed the district court in Morgan v. United States, 304 U. S. 1 (1938), for failure in the administrative proceedings to observe those basic requirements of fairness which are recognized as being of the essence of due process. In its second opinion, at pages 14 and 15, the Supreme Court said:

"The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,'—essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' "

See also Gonzales v. United States, 348 U. S. 407 (1955) ; Arndt v. United States, 222 F. 2d 484, 488 (1955) ; Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U. S. 292 (1937), requiring notice and a fair and open hearing. These authorities point out that notice and a fair and open hearing are the essential requisites of due process.[2] It is question-

---

[2] In the Ohio Bell Telephone case, supra, the Supreme Court, speaking through Mr. Justice Cardozo, said, at pages 304 and 305:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. West

able in this record whether there was adequate notice to the amusement park industry that they would be included in a minimum wage order.

Our appellate courts in Pennsylvania have spoken on this subject in the following manner:

"The requirement of due process of law in procedural matters applies to proceedings before administrative tribunals as well as before judicial bodies. It is a well-recognized principle in our law that no man's property rights shall be impaired or penalties imposed without notice and an opportunity to appear and be heard . . .": Armour Transportation Company v. Pennsylvania Public Utility Commission, 138 .Pa. Superior Ct. 243, 249 (1939).

"The requirement of due process of law, however, applies to administrative as well as to judicial proceedings. The doctrine of notice and hearing thus becomes a more potent force in our land, because it applies to the decisions and acts of administrative officials, and,

---

Ohio Gas Co. v. Public Utilities Comm'n (No. 1), supra, p. 70, 294 U. S. 63; West Ohio Gas Co. v. Public Utilities Comm'n (No. 2), 294 U. S. 79; Los Angeles Gas & Electric Corp. v. Railroad Commission, 289 U. S. 287, 304. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' (St. Joseph Stock Yards Co. v. United States, 298 U. S. 38, 73) of a fair and open hearing be maintained in its integrity. Morgan v. United States, 298 U. S. 468, 480, 481; Interstate Commerce Comm'n v. Louisville & N. R. Co., supra (227 U. S. 88). The right to such a hearing is one of 'the rudiments of fair play' (Chicago, M. & St. P. Ry. Co. v. Polt, 232 U. S. 165, 168) assured to every litigant by the Fourteenth Amendment as a minimal requirement. West Ohio Gas Co. v. Public Utilities Comm'n (No. 1), (No. 2), supra; Brinkerhoff-Faris Co. v. Hill, 281 U. S. 673, 682. Cf. Norwegian Nitrogen Co. v. United States, supra (288 U. S. 294). There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored:"

unless there are extraordinary emergencies, this essential requisite of due process cannot be dispensed with. . . .

"The courts must always be free to determine on their independent judgment whether the specific act infringes the constitutional limitation; and where substantial property rights are impaired, it must be predicated on notice and opportunity to be heard: . . ." National Automobile Service Corporation v. Barfod, 289 Pa. 307, 311, 312 (1927).

"The requisites of due process are as necessary in administrative as in judicial proceedings": Commonwealth ex rel. Chidsey v. Mallen, 360 Pa. 606, 614 (1949).

See also Pennsylvania State Chamber of Commerce v. Torquato, 386 Pa. 306, 318 (1956); Commonwealth v. Cronin, 336 Pa. 469, 473 (1939); Commonwealth to use v. Lentz, 353 Pa. 98, 103 (1945).

This matter is not before us under the provisions of the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended, 71 PS §1710.1, which in section 32, 71 PS §1710.32, provides for the right of reasonable cross-examination. This court, however, speaking through Judge Sohn, in a case involving an agency under that act (State Board of Private Business Schools v. Thomasson, 66 Dauph. 110, 128 (1954)), held that "Unfair restriction of the right of cross-examination is a denial of due process," citing Montgomery Ward & Co. v. National Labor Relations Board, 103 F. 2d 147, 149 (1939), wherein it was said that "We cannot escape the conclusion that, in the hearing (wherein the right of cross-examination was denied), the company was denied that fairness which is required by due process of law." (Parenthesis supplied)

In Interstate Commerce Commission v. Louisville and Nashville Railroad Company, 227 U. S. 88, 93

(1913), the Supreme Court of the United States, in setting forth the requisites of a fair hearing, held that "All parties . . . must be given opportunity to cross-examine witnesses, . . ." And in Shenandoah Suburban Bus Lines, Inc. Case, 355 Pa. 521 (1947), our Supreme Court, in affirming per curiam the opinion of the Superior Court at 158 Pa. Superior Ct. 638 (1946), expressly held that in quasi-judicial proceedings before the Public Utility Commission interested parties must be given an opportunity to cross-examine witnesses. See also Pennsylvania State Athletic Commission v. Bratton, 177 Pa. Superior Ct. 598 (1955).

The cases which we have hereinabove cited indicate that a fair and open hearing is the "inexorable safeguard" which protects the liberty and property of individuals in quasi-judicial proceedings before administrative tribunals. Such a hearing is the minimal requirement of the fourteenth amendment of our Federal Constitution and the Due Process Clause of the Constitution of this Commonwealth, article I, sections 1 and 9. To satisfy the requirements of due process in a quasi-judicial proceeding, the requisite hearing must be characterized by fair play. That hearing must be full and fair, but it can be neither when the right of cross-examination is denied. Since the right of cross-examination was denied in the hearings before the board, and was not accorded in the departmental hearing where no testimony was taken, there was fatal error in the administrative procedure.

The board in this case functioned pursuant to section 6(3) of the Act of 1937 in taking sworn testimony at four different hearings, and the secretary gave an opportunity to all interested parties to express their views fully at the departmental hearing. The so-called departmental hearing was not a hearing within the usual meaning of that term since no testimony was taken. Cf. McGrew v. Industrial Commission, 96 Utah

203, 85 P. 2d 608, which characterized such a gathering as a meeting rather than a public hearing. However, it was a proper step in the administrative process and had due process been afforded to all persons at the meeting before the board, the so-called departmental hearing would have been properly conducted. Absent due process in the board hearings, then the departmental hearing, affording no opportunity to present sworn testimony or to cross-examine witnesses, did not correct the infirmity in the proceedings which existed prior to that stage.

It would have been well if the department had observed the requirements of section 6(1) of the act which provides that "The department shall make and establish, from time to time, reasonable rules and regulations, not inconsistent with this act, governing the selection of a wage board and its mode of procedure." Proper regulations would have certainly pointed up the necessity to follow the requisite administrative procedures to afford due process which are lacking in this proceeding. The act clearly contemplated that regulations would set up these procedures. In the absence of such regulations, however, it is our duty to determine whether or not in the action of the board and the secretary, there was a lack of procedural due process at the administrative level. And, as we have already pointed out, there was a lack of the requisite due process in the administrative proceedings because the right to cross-examination of witnesses was denied.

We are disturbed also by the manner in which data, surveys and other information were introduced into this record. Appellants have been given no opportunity to examine this matter, test its authenticity, its relevance or scope in this proceeding, or to offer rebuttal. They have stated in their briefs and repeated in open

court that they had no knowledge of any such material until after the record was filed in this case. It seems to us that it violates the basic concept of due process to include such matter in a record when it has not been introduced in evidence and the persons who are affected thereby have no knowledge of its presence in the case. Reference is made to these matters in the record as follows:

"Information submitted by the Department of Labor and Industry", consisting of:

1. Data concerning women and minors and their wages in hotels, motels and restaurants.

2. Statistical computations relating to wages for women and minors in hotels, motels and restaurants.

3. Unsigned letters to the Governor of Pennsylvania, and to the Secretary of Labor and "to whom it may concern."

4. Letters to the Department of Labor and Industry.

5. A study based on the Women's Bureau, United States Department of Labor, under date of October 22, 1957.

6. A study of policy relating to tips and gratuities presented by the Women's Bureau, United States Department of Labor, dated October 23, 1957.

7. An estimated annual cost of a budget for employed women in Pennsylvania, compiled from tables presented by the Bureau of Labor Statistics and Women's Bureau, United States Department of Labor.

8. Minimum wage orders affecting restaurant and hotel workers in the States of Connecticut, New Jersey, New York, Ohio and Rhode Island.

9. Study of United States Department of Labor, Women's Bureau, dated November 1, 1957.

10. Study of cost of living for women workers in New York State, dated February 1956.

It cannot be determined how or when this so-called information, itemized in the 10 foregoing paragraphs,

was admitted into the record. It was not admitted as part of the sworn testimony. Hence, we feel that it was not proper for the board in its report, or the department in its order, to rely on any such information without having submitted the same to the parties interested in the administrative proceedings and without placing the same on the record in appropriate manner.

In Shenandoah Suburban Bus Lines, Inc., Case, supra, at page 644, that court dealt with this very question as follows:

"In hearings before the commission all parties must be apprised of the evidence submitted, and must be given opportunity to cross-examine witnesses; to inspect documents and to offer evidence in explanation or rebuttal according to well understood rules. In no other way can a party maintain its rights, or make a defense, or test the sufficiency of the facts to support the finding. Philadelphia Rapid Transit Co. v. Public Service Commission, 78 Pa. Superior Ct. 593. And while the commission is an administrative body, and even where it acts in a quasi-judicial capacity and is not limited by the strict rules as to the admissibility of evidence which prevail in suits between private parties, the more imperative it is to preserve the essential rules of evidence by which rights are asserted or defended. Interestate Commerce Commission v. Baird, 194 U. S. 25. Otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the commission had before it extraneous, unknown, but presumptively sufficient information to support the finding. United States v. Baltimore & Ohio S. W. R. R., 226 U. S. 14; Interstate Commerce Commission v. Louisville & Nashville R. R., 227 U. S. 88, 93."

And in Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, supra, at page 300, the Supreme Court said:

"The fundamentals of a trial were denied to the appellant when rates previously collected were ordered to be refunded upon the strength of evidential facts not spread upon the record.

". . . Upon the strength of these unknown documents refunds have been ordered for sums mounting into millions, the Commission reporting its conclusions, but not the underlying proofs. . . . This is not the fair hearing essential to due process. It is condemnation without trial."

In Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania, 332 Pa. 15, 21 (1938), our Supreme Court stated that, although the commission could make its own independent survey, ". . . the result of that survey should be placed on the record . . . , and the parties who made the survey should be subject to such cross-examination as is proper. Interested parties should be accorded opportunity to test the reliability of the Commission's evidence before an order is promulgated, revised or changed."

In State Board of Medical Education and Licensure v. Harney, 60 Dauph. 204 (1949), this court, speaking through President Judge Smith, held that it was improper to admit into evidence nine affidavits that were not made part of the record and that the board erred in considering them. By the same token, we feel that because of the placing in this record of this unknown documentary information there was "not the fair hearing essential to due process": Jordan v. American Eagle Fire Insurance Company, 169 F. 2d 281 (1948); National Labor Relations Board v. Prettyman, 117 F. 2d 786 (1941). See Annotation, 18 A. L. R. 2d 555.

The information which was included in the record without being properly admitted therein deals with wage scales, living costs, budgets and other data both in Pennsylvania and other States, for example, New York, New Jersey, New Hampshire, Connecticut and Ohio. There are included Federal surveys and surveys in other States concerning wages of women in food service employments and also miscellaneous and anonymous letters.

This information is comprehensive. We are aware that in the Harney case this court, in rejecting nine affidavits relied upon by the administrative agency, held that the evidence was otherwise sufficient to sustain the findings of the agency regardless of the affidavits. Here, however, we have no findings and because of the nature and extent of this information we are bound to conclude that any interested parties should have had an opportunity to test the validity thereof, its application, and to rebut the same if they chose to do so.

The Commonwealth argues that the proceedings before the board were not quasi-judicial. They argue that these proceedings were not similar to cases before the Public Utility Commission and Interstate Commerce Commission. It is their contention that the wage board had these matters under investigation; that neither the board nor the department was circumscribed by the rules of evidence in the exercise of their investigatory powers; that the board could make its report to the Department of Labor and Industry on the basis of its own broad powers of inquiry; that the board's powers were similar to those of a grand jury or a congressional committee of investigation; that its report to the department was in the nature of an inter-office communication. If we were to accept this argument as sound, we would be unable to comprehend why

the legislature conferred jurisdiction on this court in section 12 to hear this appeal "on any question of law."

Also, the Commonwealth, in arguing that the wage board's duties were advisory only, states that the board "may be compared to the National Defense Mediation Board, the War Labor Board and the National Wage Stabilization Board." The Commonwealth's contention in this respect is refuted by the action of the board and by the provisions of section 6(3) of the act which empowers the board to administer oaths, "subpoena the attendance and testimony of witnesses and the production of all books, records, and other evidence." The board exercised these powers and took the sworn testimony of witnesses at public hearings.

Our attention has been called to Opp Cotton Mills, Inc., v. Administrator of the Wage and Hour Division of the Department of Labor, 312 U. S. 126 (1941). This case involved the wage and hour provisions of the Federal Fair Labor Standards Act of June 25, 1938, 52 Stat. 1060, 29 U. S. C. §201, as applied to manufacturers of textile goods for interstate commerce. The Federal act provides for an industry committee to act as an investigating body with the duty to report its recommendations to the administrator. This report is made the basis of proceedings before the administrator "which are judicial in character, with provisions for notice and full hearing. The issue to be determined by the Administrator upon the hearing is whether the recommendations of the committee 'are made in accordance with law, are supported by the evidence adduced at the hearing,' . . ." While the industry committee functions as an investigatory body under the Federal act, due process is afforded by a judicial hearing before the administrator who must then determine whether the recommendation of the committee is supported by the testimony taken by him

at the hearing. Clearly, there was due process in the Federal procedure.

The departmental hearing here was held on January 14, 1958, when views were exchanged on the report and recommendations of the wage board. Contrast such procedure with the proceedings in the Opp Cotton Mills case. We quote from the Supreme Court's opinion at page 139:

"On May 27th the Administrator gave notice in the Federal Register which was also issued to the press and published in many newspapers, of a public hearing on the recommendations of the Committee. At the hearing which commenced on June 19, 1939, and was concluded on July 11th, more than 135 witnesses were heard, over 3,300 pages of testimony were taken and eight volumes of exhibits were submitted; oral arguments were heard by the Administrator on July 25th and written briefs were received until August 22, 1939. On September 29, 1939, the Administrator made his findings and order carrying into effect the recommendations of the Committee, . . ."

That the textile industry presented to the Federal officials problems that were national and widespread in their scope compared to the matters of State-wide concern to the administrative officials in this case does not derogate from the requirement that processes appropriate to protecting the rights of all parties should here have been followed.

Here, however, the only evidence taken was that adduced before the wage board. The only opportunity to submit testimony was at the hearings held by the board. The hearing before the secretary provided nothing more than an opportunity to exchange views by the interested parties. It was in the nature of an argument on the record already then made before the wage board. Obviously, the departmental procedure here

differed in an important way from the procedure herein mentioned before the Federal administrator in the Opp Cotton Mills Case.

That the wage board in the instant case was conducting its own investigation does not authorize it to depart from the requisite standards of procedure. It should be pointed out that in Morgan v. United States, supra, the Secretary of Agriculture had instituted an inquiry under the act of Congress authorizing him to conduct an "investigation and hearing . . . on his own initiative." The board was correct in its procedure to the extent that it held hearings and took testimony under oath. It fell into error in reference to cross-examination. If, as suggested by the Commonwealth, the report of the wage board was to be treated as being in the nature of an advisory communication resulting from the board's ex parte investigatory powers, then at the departmental hearing it would have been necessary to hold a public hearing to take testimony under oath and to permit full cross-examination. It was necessary at some stage to fulfill the requirements of a quasi-judicial hearing.

In denying appellants a right to cross-examine, the board chairman seems to have been impressed with the view that all interested parties should not be permitted that right. There was a requirement under the provisions of section 6(4), 43 PS §331f(4), that the report of the board, including its recommendations, should be submitted to the secretary within 60 days. And at the organizational meeting of the board in Harrisburg on October 29, 1957, reference was made by the secretary to the fact that the board was working under a schedule requiring the report within that time, but that "if absolutely essential an extension can be arranged."

However, it is our belief that provisions could and should have been made for cross-examination of wit-

nesses. The extent of such cross-examination was within the control of the board so long as a fair opportunity to cross-examine was afforded. The rule before the board would be the same as in judicial proceedings; cross-examination is a matter of right; the bounds thereof lie within the sound discretion of the court: Kaplan v. Loev, 327 Pa. 465 (1937) ; United States v. Toner, 173 F. 2d 140, 144 (1949) ; United States v. Stoehr, 196 F. 2d 276, 280 (1952). The quantum of evidence produced in the four days at these different hearings was not such as to indicate that the board, in the exercise of its sound discretion, could not have expeditiously discharged its full duty by permitting cross-examination within proper limitations.

At this point, it perhaps would be well to observe that should the 60-day period be deemed by the department to be unduly restrictive, the remedy would lie with the legislature, and the answer surely would not be to unduly restrict the rights of persons appearing at hearings before the wage board. It is our view, however, that there is nothing in this record to indicate that by extending to appellants their right of cross-examination, the board's activities would have extended beyond the 60-day period.

The constitutionality of the Act of 1937 was upheld in Fisher's Petition, 344 Pa. 96 (1942). In that case the Supreme Court rejected the argument that the Act of 1937 sets up no standard to guide the wage board in its determination as to what is a fair wage. In rejecting this argument, the court said, at page 98, "We cannot accept the argument that no standards are set up in the statute to guide determination of what is a fair wage," and pointed out the provisions of the statute, sections 2(7) and 5, as fixing the standards which serve as guides to the determination of what is a fair wage. The administrative officials, that is the

wage board, the Department of Labor and Industry and its secretary, act as agents of the legislature in determining a fair wage and they must fix these wages in accordance with and under the limitations fixed by the legislature.

" '. . . The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' . . . So also the legislature may confer upon an executive department or other agency the power to find whether the facts exist upon which a law is to operate": Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260, 261 (1938).

Where an administrative agency functions as an arm of the legislature in a quasi-judicial proceeding, it must make a determination of the facts. That determination must be within the sphere of the authority conferred upon the agency by the legislature. And the record must show that the action of the agency was taken within the scope of its delegated authority.

In a long line of cases it has been held that where an administrative agency, pursuant to delegated legislative power, promulgates an order, definitive, basic findings of fact are essential to the validity of its action, and such findings must be sufficiently specific to enable the court in reviewing that action to pass upon questions of law: Klawansky v. Public Service Commission, 123 Pa. Superior Ct. 375, 379 (1936); Pennsylvania Power and Light Company v. Public Service Commission, 128 Pa. Superior Ct. 195, 218 (1937); Erie Lighting Company v. Pennsylvania Public Utility Commission, 131 Pa. Superior Ct. 190, 196 (1938); Aizen v. Pennsylvania Public Utility Commission, 163 Pa. Superior Ct. 305, 314 (1948); Tevis v. The Milk Control Commission, 64 Dauph. 190 (1944); Panama

Refining Co. v. Ryan, 293 U. S. 388, 431, 432 (1935) ; Colorado-Wyoming Gas Co. v. Federal Power Commission, 324 U. S. 626, 634 (1945) ; Beaumont, Sour Lake & Western Railway Company v. United States, 282 U. S. 74, 86 (1930) ; United States v. Baltimore & Ohio Railroad Co., 293 U. S. 454, 464 (1935). Failure to make the requisite findings is a violation of due process.

The Commonwealth argues that the orders do contain findings of fact, even though they are informal. We believe an examination of the orders refutes this contention.[3] They do make reference in a broad way

---

[3] The orders, preceding the provisions fixing minimum wage rates, contain the following language:

"Pursuant to the provisions of the Act of May 27, 1937, P. L. 917, a public hearing having been held and testimony and argument having been heard on minimum wages for women and minors in . . . occupations, the following conclusions are reached.

"The Department has considered all information available to it, including surveys of wages paid in the occupation(s) in question; estimates of cost of living of women workers in the Commonwealth; the Federal minimum wage standards and those of other States; communications from women workers in . . .; variations in wages paid women and minors in different parts of the Commonwealth; wages paid and conditions prevailing in different types of . . . . All the pertinent factors from the foregoing were weighed as a guide in determining the reasonable value of services rendered, where services are rendered at the request of an employer, without contract as to the amount of wage to be paid. The data received at the Public Hearing of January 14, 1958, on the report and recommendation of the Restaurant, Hotel and Motel Minimum Wage Board and the regulations as approved by the Department, jointly with the aforementioned information, were weighed in conjunction with and in order to evaluate the Wage Board report.

"From all the information available, the conclusion is inevitable that women and minors have been employed in this (these) occupation(s) for wages unreasonably low and not fairly commensurate with the value of the services rendered and not adequate to maintain an adequate standard of living. The wages paid are not

to some of the problems confronting the board. They do contain some conclusions, but in our judgment there are no definitive findings of fact which in any way would serve as an indication that facts exist upon which the act in question is to operate. It is the absence of this determination as to the basic facts that must necessarily render these orders void.

such as, in the public interest, are deemed adequate for the maintenance of health and well-being.

"The Department has considered questions of variations based upon geographic and other criteria, as weighed against equitable application of the order.

"The Department recognizes that the Wage Board may not have heard from many women or minor employes, but that is not surprising, in view of possible fears of losing their jobs or their inability to get away from work. However, the numbers of individual employers who appeared to testify was not great either. The Department is well aware of the fact that perhaps associations of employers and employes may not fully present all of the views or all of the conditions of employers or employes, but they do furnish much of value in aid of reaching considered conclusions.

"The Department is fully aware of the importance of the . . . business(es) in the economy of this Commonwealth; and though the Act does not specifically require the Department to consider the effect of its action upon the businesses and occupations concerned, the Department has done so. The conclusions reached are believed to be both warranted and reasonable, considering the broad aspect of the public interest of the community at large in the health and well-being of women and minors in this (these) occupation(s).

"As indicated above, the Department has considered very carefully the impact on hotels in small communities, and the time required and problems involved in adjusting to new minimum wage standards and regulations, and concluded that the transition and adjustment of hotels in small communities will be more difficult than for those in larger communities. To ease their adjustment and avoid discrimination in the application of the order, the Department has decided to set forward the effective date.

"For all of these reasons and considerations, the Department, therefore, shall and does approve report of the Wage Board and the Department promulgates the following Directory Order No. —."

Therefore, it is our considered judgment that the action of the secretary must be reversed. Under the statute we have no power to remand the record for further action in accordance with this opinion. Our opinion, however, is not to be construed as restricting appropriate proceedings at the administrative level.

We have refrained from discussing this case on its merits in the absence of any findings of fact necessary to establish that the administrative officials functioned in accordance with their delegated powers. Since we have dealt here with due process, it is deemed proper to discuss appellants' contention that under the statute a wage board was required for each of the industries affected by directory orders nos. 2 and 3. Their contention is, for example, that not only must there be separate boards for restaurants, hotels and motels, but also for industries such as camps and clubs. We disagree with this contention.

There is nothing in the act to indicate that such a requirement was intended. Section 4 of the act provides for the appointment of a minimum wage board for women or minors in "any occupation or occupations." One board, in our judgment, can function in occupations engaged in food service establishments of this Commonwealth. But any order of such a single board necessarily must be comprehensive and must contain those findings that are required to support its validity. It must, of course, fulfill all of the requirements of due process.

For the foregoing reasons, therefore, we enter the following

*Order*

And now, May 12, 1958, the action of the Secretary of Labor and Industry in promulgating minimum wage orders nos. 2 and 3 dated January 24, 1958, is reversed and those orders are herewith set aside.